UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
 :
CORETTA RODDEY, :
 :
                              Petitioner, :
 :     22-CV-6310 (VSB)
      - against - :
 :     **OPINION & ORDER**
 :
INFOSYS TECHNOLOGIES LIMITED, :
INC., :
 :
                             Respondent. :
 :
-----------------------------------------------------------X

Appearances:

Susan Ghim
Law Office of Susan Ghim
New York, NY
*Counsel for Petitioner*

Lauren Jill Marcus
Benson Pope
Littler Mendelson
Newark, NJ
*Counsel for Respondent*

VERNON S. BRODERICK, United States District Judge:

      Petitioner Coretta Roddey ("Petitioner" or "Roddey") seeks a preliminary injunction to stay one arbitration in Georgia and compel another arbitration in New York. Because Petitioner has not shown irreparable harm and the parties undisputedly agreed to arbitrate, Petitioner's motion to enjoin the ongoing arbitration and compel a new arbitration is DENIED, and this action is DISMISSED in its entirety.

I.      **<u>Factual Background and Procedural History</u>**[1]

Petitioner worked as a Principal Business Consultant for Respondent Infosys Limited ("Respondent" or "Infosys") beginning in October 2014. (*See* Roddey Decl. ¶ 17.) As part of the onboarding process for her job, Petitioner signed a Mutual Arbitration Agreement with Respondent on November 7, 2014 (the "2014 Agreement"). (*See id.*; *see also id.* Ex. A at 4–8.)[2] The 2014 Agreement provided that any arbitration would "take place in the county in which the Employee works or worked at the time the arbitrable dispute or claim arose" and would be "governed by the law of the state where Employee works or worked at the time the arbitrable dispute or claim arose." (*Id.* at 7; *see also* Ghim Decl. ¶ 9.) Petitioner was a resident of Georgia, (*see* Roddey Decl. ¶ 18), and Petitioner's offer letter indicated that Petitioner's "work location would be Atlanta, GA," (*id.* Ex. A at 14). However, Petitioner replied to her offer letter and requested that her work location be changed to New York. (*See id.* at 13.) The parties dispute whether Petitioner ultimately "worked" in New York or Georgia. (*Compare, e.g.*, Pet. ¶¶ 7, 8, 11, 12–14, *with* Opp'n at 1, 2–3, 11; *id.* Ex. D (summary of Petitioner's work assignments).) Respondent terminated Petitioner's employment on September 23, 2016. (Roddey Decl. ¶ 24.)

On September 22, 2020, Petitioner filed a pro se demand for arbitration with the American Arbitration Association ("AAA") in New York City asserting claims of hostile work

---

[1] The facts set forth here are drawn principally from the allegations in the Petition, (Doc. 1 ("Pet.")), the memorandum of law in support of the Petition, (Doc. 5 ("Pet'r's Mem.")), the declaration of Coretta Roddey in support of the motion, (Doc. 6 ("Roddey Decl.")), the declaration of Susan Ghim in support of the motion, (Doc. 7 ("Ghim Decl.")), Petitioner's renewed motion for a temporary restraining order, (Doc. 13 ("Renewed TRO Mot.")), Respondent's memorandum in opposition (Doc. 19 ("Opp'n")), the transcript of the hearing on Petitioner's motion for a temporary restraining order on August 2, 2022 ("Tr."), Respondent's letter in response, (Doc. 22 ("Resp't's Letter")), Petitioner's reply, (Doc. 23 ("Pet'r's Reply")), the declaration of Coretta Roddey in support of the reply, (Doc. 24 ("Roddey Reply Decl.")), the declaration of Susan Ghim in support of the reply, (Doc. 25 ("Ghim Reply Decl.")), Respondent's sur-reply, (Doc. 27 ("Resp't's Sur-Reply")), and all accompanying exhibits. Unless otherwise indicated, the facts in this section are undisputed.

[2] Where exhibit pages are unnumbered, page numbers refer to the page numbers assigned by ECF.

environment, wrongful termination based on race, and "garden variety" emotional distress (the "2020 Arbitration").  (*See id.* ¶ 27; *see also id.* Ex. A at 2–3.)  On January 12, 2021, Respondent filed a response to Petitioner's arbitration demand and asked that the arbitration be moved from New York City to Atlanta, Georgia.  (*See* Opp'n at 3; *see also id.* Ex. C.)  Petitioner filed pro se objections to the transfer.  (*See* Opp'n at 3–4; *see also id.* Ex. J.)  On February 5, 2021, the AAA determined that the arbitration would be held in Atlanta, Georgia because "the parties' agreement stipulates the locale 'shall take place in the county in which the employee works or worked at the time the arbitrable dispute or claim arose.'"  (Opp'n at 4; *see also id.* Ex. K.)

Counsel first appeared on Petitioner's behalf in the 2020 Arbitration in April 2021.  (*See* Roddey Decl. ¶ 11.)  On July 13, 2021, Respondent sent Petitioner's counsel a copy of a 2016 Mutual Arbitration Agreement (the "2016 Agreement"), which does not contain Petitioner's signature, but which Respondent claims governs the dispute.  (*See* Resp't's Sur-Reply Ex. 4, at 2; *see also* Roddey Decl. ¶¶ 7, 8, 12; *id.* Ex. B; Ghim Decl. Ex. 1; Tr. 30:23-31:2, 37:14-38:2, 56:23-57:2; Resp't's Letter Exs. A, B; Resp't's Sur-Reply at 6–7.)  The 2016 Agreement has a Texas choice-of-law provision.  (*See* Resp't's Sur-Reply Ex. 4, at 9; *see also* Ghim Decl. ¶ 14.)  On August 3, 2021, Respondent sent a copy of the 2016 Agreement to the AAA, as an attachment to a partial motion to dismiss.  (*See* Resp't's Sur-Reply Ex. 4, at 3.)  Petitioner stipulated to the partial motion to dismiss and did not raise the issue of whether the 2014 Agreement or 2016 Agreement governed the party's dispute.  (*See* Ghim Reply Decl. ¶¶ 13–14; *id.* Ex. 4.)  On September 14, 2021, the parties participated in an initial scheduling conference before the arbitrator, Tanya Andrews Tate (the "Arbitrator" or "Arbitrator Tate").  (*See* Opp'n at 4; *id.* Ex. L.)  Following the conference, the Arbitrator issued an order indicating that "[t]he parties have agreed that the hearing shall take place in Atlanta, Georgia," and that "[n]o issues

were raised during the initial Scheduling Conference as to whether or not a choice of law issue exists in this matter concerning what law governs the determination of the parties' disputes." (Ex. L §§ 1.4, 3.2.)

On June 1, 2022, the Arbitrator held a discovery conference addressing, in part, a dispute concerning whether Petitioner needed to produce certain medical records. (*See* Opp'n at 5.) Petitioner's counsel argued at the conference that New York law should govern. (*See id.*) On June 21, 2022, Arbitrator Tate issued an order, applying Texas law, requiring that Petitioner "provide the identity and contact information of her medical providers," or "provide an affidavit to the arbitrator attesting under oath that she has sought no medical treatment of any type from any provider at any time during the requested time period," or else "withdraw her claim for emotional distress damages." (Roddey Decl. Ex. E at 3–4.) Thereafter, Petitioner filed multiple objections to Arbitrator Tate's continued assignment as arbitrator, but the AAA repeatedly reaffirmed Arbitrator Tate's appointment. (*See* Opp'n at 5–6; *see also id.* Exs. P, Q, R, S, T.)

On July 15, 2022, Petitioner filed a second demand for arbitration for breach of contract and fraud by Respondent in New York City (the "2022 Arbitration") with the AAA. (*See* Roddey Decl. ¶ 33; *id.* Ex. G.) Petitioner's 2022 Arbitration demand alleged, "Respondent fraudulently induced and/or misrepresented to the AAA that the 2016 Agreement was executed by the parties to bind the parties to an agreement that was never fully executed or otherwise acknowledged by Claimant." (*Id.* Ex. G at 6.)

On July 25, 2022, Petitioner filed a petition asking me to issue a temporary restraining order ("TRO") (a) enjoining the 2020 Arbitration, (b) invalidating the 2016 Agreement, (c) compelling the 2022 Arbitration, (d) applying and enforcing the 2014 Agreement, and (e) voiding the 2020 Arbitration. (Pet. ¶ 93.) I denied the request for a TRO, scheduled an order to

4

show cause hearing for August 10, 2022, and ordered Respondent to file any opposition by August 5, 2022. (Doc. 11.) On July 28, 2022, the AAA consolidated the 2022 Arbitration and the 2020 Arbitration, after determining that the 2022 Arbitration demand was "already being administered by the AAA and is before Arbitrator Tate." (Renewed TRO Mot. Ex. B.) That same day, Petitioner filed a letter motion addressed to me seeking to renew her application for a TRO. (Renewed TRO Mot.) I ordered a hearing for August 2, 2022. (Doc. 12.) At the hearing, I again denied the request for a TRO. (*See* Tr. 44:8-45:18.)

On August 8, 2022, Petitioner filed a reply in support of her motion for a preliminary injunction, (Pet'r's Reply), a declaration of Coretta Roddey with exhibits in support, (Roddey Reply Decl.), and a declaration of Susan Ghim with exhibits in support, (Ghim Reply Decl.). On August 9, 2022, I *sua sponte* granted Respondent leave to file a sur-reply "[b]ecause Petitioner's reply raise[d] issues involving depositions that were taken after Respondent filed its opposition on August 2, 2022." (Doc. 26.) On August 15, 2022, Respondent filed a sur-reply. (Resp't's Sur-Reply.)[3] On October 4, 2022, Petitioner moved for leave to file a third petition for a stay, (Doc. 31), which I denied insofar as the petition would be made on the same basis as the first two requests I had previously denied, (Doc. 32).

## II. Legal Standards

### A. *Preliminary Injunction*

"To successfully seek a preliminary injunction, a moving party must show four elements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips

---

[3] Petitioner's reply contained supplemental facts about potential discovery disputes related to depositions taken after the August 2, 2022 conference. (*See* Pet'r's Reply at 1–2, 4.) Since these issues had not even been raised with the Arbitrator yet, (*see* Resp't's Sur-Reply at 2–3), they are irrelevant to the instant dispute, and I need not address them here.

5

in the moving party's favor; and (4) that the public interest is not disserved by relief." *JBR, Inc. v. Keurig Green Mt., Inc.*, 618 Fed. Appx. 31, 33 (2d Cir. 2015).

"[A]n irreparable injury is an injury that is not remote or speculative but actual and imminent, . . . for which a monetary award cannot be adequate compensation," *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (internal quotation marks omitted), and which cannot be remedied "if a court waits until the end of trial to resolve the harm," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted). "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trs. for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 727 (S.D.N.Y. 2019) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). "Thus, if a party fails to show irreparable harm, a court need not . . . address the remaining elements." *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019).

### B.   *Federal Arbitration Act*

The Federal Arbitration Act provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "When considering a motion to compel arbitration, courts must resolve two questions: '(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue.'" *Dowe v. Leeds Brown L., P.C.*, 419 F. Supp. 3d 748, 756 (S.D.N.Y. 2019) (quoting *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015)). "Courts deciding motions to compel apply a standard similar to that applicable for a motion for summary judgment," in that "the court considers all relevant, admissible evidence submitted by the parties . . . and draws all reasonable

6

inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks omitted).

### III.     Discussion

Here, there is no dispute that the parties agreed to arbitrate Petitioner's claims, and that the parties are in fact currently arbitrating Petitioner's claims. For those reasons, there is no irreparable harm, and there is nothing for me to compel.

Petitioner's request for a preliminary injunction is denied because I find, again, that there is no irreparable harm. (*See* Tr. 44:10-12 ("[T]he reason I struck the request for temporary injunctive relief is that I didn't really see that there was irreparable harm here.").) Petitioner argues that "compelling arbitration of a matter not subject to arbitration constitutes per se irreparable harm." (Pet'r's Mem. at 14 (citing *Leong v. The Goldman Sachs Grp. Inc.*, No. 13-CV-8655 (JMF), 2016 WL 1736164, at *9 (S.D.N.Y. May 2, 2016); *New York Bay Capital, LLC v. Cobalt Holdings, Inc.*, 456 F. Supp. 3d 564, 573 (S.D.N.Y. 2020));[4] *see also* Renewed TRO Mot. at 2 (citing *Citigroup Inc. v. Seade*, 2022 WL 179203 (S.D.N.Y. Jan. 20, 2022)).[5] This assertion is somewhat baffling in this case because the parties agree that Petitioner's employment law claims are subject to arbitration "in the county in which the employee works or worked at the time the arbitrable dispute or claim arose." (*Compare, e.g.*, Pet'r's Mem. at 4, 6, *with* Opp'n

---

[4] In *New York Bay Cap.*, the parties' contract contained a forum selection clause requiring the parties "to bring disputes arising out of or related to the contract in the Southern District of New York," and Judge Gregory H. Woods found that "as a matter of law, there is irreparable harm when a party is compelled to arbitrate without having agreed to arbitration because that party is forced to expend time and resources arbitrating an issue that is not arbitrable." 456 F. Supp. 3d at 566, 573 (internal quotation marks omitted). Here, there is no such harm since the parties have agreed to arbitration.

[5] In *Citigroup*, Judge John P. Cronan granted a TRO enjoining a Respondent from pursuing litigation in Mexico because his claims were already being arbitrated in the United States pursuant to an arbitration agreement. 2022 WL 179203, at *9. In *Citigroup*, the harm was being "forced to litigate rather than arbitrate [the] dispute." *Id.* (internal quotation marks omitted). Petitioner is not being forced to litigate here; if anything, Petitioner is forcing Respondent to litigate in this court despite having agreed to arbitrate any dispute.

at 3–4, 10–11.)  "[T]he question to be resolved is not *whether* to proceed by arbitration, but *which arbitration panel* should decide certain issues." *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 655 (2d Cir. 2011) (internal quotation marks omitted) ("[D]isputes over the interpretation of forum selection clauses in arbitration agreements raise presumptively arbitrable procedural questions.").  Since there is no question of arbitrability, there is no irreparable harm.

Further, Petitioner's motion to enjoin the arbitration is predicated on one central allegation that is belied by the factual record.  Petitioner alleges that "on or about January 21, 2021, Respondent fraudulently induced the AAA to switch the location of the arbitration to [Georgia] based on the invalid 2016 Agreement that [Petitioner] never signed or otherwise agreed to."  (Roddey Decl. ¶ 32; *see also id.* ¶ 34; Pet. ¶¶ 27, 62, 65; Pet'r's Mem. at 1; Ghim Decl. ¶¶ 3, 6; Tr. 17:14-22.)  However, Respondent provides a copy of the relevant AAA decision, which clearly indicates that the AAA moved the location of the arbitration based on the 2014 Agreement that Petitioner signed.  (*See* Opp'n Ex. K ("We note the parties' agreement stipulates the locale 'shall take place in the county in which the employee works or worked at the time the arbitrable dispute or claim arose.'  Therefore, the locale for this matter will be Atlanta, GA.").)  The AAA's decision quotes the language of the 2014 Agreement, (*see* Roddey Decl. Ex. A at 7), and the decision is consistent with Petitioner's offer letter, which explicitly says that Petitioner's "work location would be Atlanta, GA," (*id.* Ex. A at 14).  Moreover, Respondent provides correspondence indicating that Respondent first sent Petitioner's counsel a copy of the 2016 Agreement on July 13, 2021 as part of discovery in the arbitration, and that Respondent did not send a copy of the 2016 Agreement to the AAA until August 3, 2021, as an attachment to a partial motion to dismiss.  (*See* Resp't's Sur-Reply Ex. 4.)  In light of this evidence, Petitioner's

8

contention that Respondent secretly sent the 2016 Agreement to the AAA in January 2021, (*see, e.g.*, Tr. 48:20-49:11), is baseless and conclusory. Considering "all relevant, admissible evidence submitted by the parties" and drawing "all reasonable inferences in favor of the non-moving party," I find that the AAA relied on the 2014 Agreement in deciding to transfer the arbitration from New York to Georgia, so the AAA's suspected reliance on the 2016 Agreement cannot provide a basis for me to enjoin the Georgia arbitration. *Meyer*, 868 F.3d at 74 (internal quotation marks omitted). To the extent the parties also disagree about how to interpret the forum selection clause in the 2014 Agreement, (*see* Opp'n at 10–11; Tr. 20:11-20), I lack subject-matter jurisdiction to resolve that dispute. *See UBS Fin. Servs.*, 660 F.3d at 655.

Finally, Petitioner's request to compel arbitration in New York is moot. The AAA reviewed Petitioner's 2022 Arbitration demand and "determined that this dispute is already being administered by the AAA and is before Arbitrator Tate" in Georgia. (Renewed TRO Mot. Ex. B.) Therefore, there is no separate 2022 Arbitration for me to compel. Although Petitioner cites *Leong* for the proposition that when there are two competing arbitrations, a district court may compel one and stay the other, (*see* Pet'r's Mem. at 11–12), this case is inapposite. In *Leong*, Judge Jesse Furman had previously stayed the plaintiff's federal claims against the defendant because the parties had agreed to arbitrate any disputes in England. *See Leong*, 2016 WL 1736164, at *1. Two years later, the defendant returned to Judge Furman seeking a stay of a Commodity Futures Trading Commission ("CFTC") proceeding that the plaintiff had initiated instead of proceeding with the arbitration in England. *See id.* Judge Furman enjoined the plaintiff from proceeding with the CFTC proceeding and directed plaintiff to submit any dispute to arbitration. *Id.* at *3. Here, the AAA has consolidated the two arbitration demands, so there is only one arbitration, rather than two competing arbitrations. (*See* Renewed TRO Mot. Ex. B.)

9

Rather than raising a legitimate dispute, Petitioner appears to be forum-shopping for a more sympathetic ear. Petitioner filed this lawsuit after the AAA overruled several objections Petitioner lodged against Arbitrator Tate. (*See* Opp'n at 5–6; *see also id.* Exs. P, Q, R, S, T.) Petitioner states in her affidavit, "[b]ased on the rulings to date by the GA Arbitrator, I have no confidence whatsoever that this Arbitrator is capable of maintaining even an appearance of impartiality and that there is any probability of a fair review of my case or any determination in my favor." (Roddey Decl. ¶ 36.) Petitioner's objections to Arbitrator Tate are outside my purview. To the extent the parties have an active dispute about what governing law should apply, that dispute is properly before the Arbitrator.[6] (*See* Opp'n Ex. T ("Any contentions regarding governing law may be raised to the currently appointed arbitrator for a ruling.").) A district court's power to interfere in an arbitration is indeed "strictly limited in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 342 (2d Cir. 2010) (internal quotation marks omitted). Petitioner repeatedly asserts that she has no other remedy if the Arbitrator rules against her. (*See, e.g.*, Roddey Decl. ¶ 30; Ghim Decl. ¶¶ 8, 31; Renewed TRO Mot. at 2, 3; Doc. 31, at 2.) However, the Federal Arbitration Act does permit district courts to vacate an arbitration award, if, among other things, "the award was procured by corruption, fraud, or undue means," "there was evident partiality or corruption in the arbitrators," "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy," or "the arbitrators exceeded their powers." 9 U.S.C. § 10(a). Here, the parties agreed to arbitrate, and they are now arbitrating. Until an

---

[6] Although not dispositive to my decision, I note that Petitioner has not provided any non-conclusory reason to believe that the Arbitrator's decision concerning the production of Petitioner's medical records would have come out any differently under New York or Second Circuit law.

award is rendered, it is not the role of a district court to review or overrule the Arbitrator's decisions.

## IV. Conclusion

For the foregoing reasons, Petitioner's motion to enjoin an ongoing arbitration and compel a new arbitration is DENIED, and this action is DISMISSED in its entirety. The Clerk of Court is respectfully directed to terminate this action.

SO ORDERED.

Dated: November 3, 2022
    New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge